1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.S., individually and in her capacity as parent and guardian of minor student, T.A., | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT AND JURY DEMAND |
| SEATTLE SCHOOL DISTRICT No. 1, | |
| Defendant. | JURY DEMAND |

Plaintiffs, by and through their attorneys, allege as follows:

## I.   PRELIMINARY STATEMENT

1.1      This is a civil rights and disability discrimination case brought by an African American student with disabilities, T.A. and his mother T.S., against the Seattle School District No. 1 ("Defendant" or "District"). Racism and ableism have permeated the District for years. At South Shore K-8, the special education teacher, Tamara Kelley (Kelley), openly discussed her harsh approach as necessary when disciplining African American students. She also had a regular practice of forcing young disabled students into the bathroom when they cried. Kelley's reputation for this behavior was well known to the District and her own supervisors described her as a "ticking time bomb."

1.2      On January 20, 2016, when Kelley forced T.A. into a bathroom, pushed him to the ground, kicked him squarely in the chest, and then yelled at him to stop crying. Although Kelley

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

admitted to and was criminally charged for her conduct, the District allowed her to remain employed and in a teaching position until KUOW reported detailed this event in a series of stories related to abuse of students by District teachers in November 2020.

1.3    Plaintiffs bring this action against Defendant for violations of T.A.'s rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Americans with Disabilities Act 42 U.S.C. 12101 et seq., Section 504 of the Rehabilitation Act of 1973, and his right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983. The Plaintiffs also bring claims under Washington law, to include violations of the Washington Law Against Discrimination, Negligence, Negligent Hiring, Training, and Supervision, False Imprisonment, Assault and Battery, Outrage, and Loss of Consortium.

## II.    JURISDICTION AND VENUE

2.1    This Court has jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331, including any civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution, laws, or treaties caused under the color of state law, statute, ordinance, regulation, custom, or usage pursuant to 28 U.S.C. § 1343.

2.2    This case arises under federal laws and this Court therefore has jurisdiction.

2.3    The Court has supplemental jurisdiction over state law claims made here pursuant to 28 U.S.C. § 1367.

2.4    A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred pursuant to 28 U.S.C. § 1391.

2.5    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all the incidents complained of in this Complaint occurred in the city of Seattle, in King County, Washington.

## III.    PARTIES

3.1    Plaintiff T.A. is currently 14 years old and lives in Seattle, in King County, Washington.

3.2    T.A. is African American and has been diagnosed with Autism.

COMPLAINT AND JURY DEMAND -2

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

3.3     T.A. qualifies as an "individual with a disability" within the meaning of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131(2)), in that he has an impairment that substantially limits his ability to perform one or more major life activities and who, with or without a reasonable modification of educational program requirements, meets the essential eligibility requirement for the receipt of special education and other services provided by the District.

3.4     Plaintiff T.S. is the mother of T.A. and is a resident of Seattle, in King County, Washington.

3.5     Defendant Seattle School District is a first-class school district and quasi-municipal entity organized under the laws of Washington located in Seattle, in King County, Washington.

3.6     Pursuant to the Revised Code of Washington Section 28A.320.010, the District is a corporate body that possesses all the usual powers of a public corporation and may sue and be sued and transact all business necessary for maintaining and protecting the rights of the District. The District receives "Federal financial assistance" within the meaning of Section 504 of the Rehabilitation Act of 1973 and its implementing regulations. The District is a "public entity" within the meaning of Title II of the Americans with Disabilities Act because it is a "department, agency, . . . or other instrumentality of a State . . . .government." 42 U.S.C. § 12131(1). Consequently, it is subject to suit under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

3.7     The District is entrusted with the responsibility for ensuring that the rights and protections under the federal and state Constitutions and laws are afforded to students who are entitled to provision of its programs, services, and procedures. Further, the District is responsible for enforcing, and ensuring that its subordinates, agents, and employees enforce the federal and state laws pertaining to the provision of special education and related services to qualified students.

COMPLAINT AND JURY DEMAND -3

## IV.   FACTUAL ALLEGATIONS

4.1     In agreeing to accept federal funding annually (including without limitation during the years 2015 to present) for use in providing education, including special education programs and services and mental health services, the District is responsible for providing each and every special education qualified student, including T.A., with meaningful access to education and reasonable accommodation, and to ensure that no student is subjected to discrimination because of disability.

4.2     In 2015-2016 school year, the T.A. was enrolled at South Shore K-8 within the boundaries of the District at 4800 S Henderson St, Seattle, WA 98118. At all times relevant to this action T.A. has been eligible to receive special education services from the District.

4.3     Beginning in 2015 and continuing during all relevant times, the District knew or should have known T.A. to be an African American student with Autism.

4.4     T.A. was placed in a classroom for special education students referred to by the District as the Emotional Behavior Disorder (EBD) classroom. This is a self-contained classroom for students with disabilities. There is a special education teacher and several instructional assistants (IAs) assigned to the class.

4.5     Tamara Kelley (Kelley) was the special education teacher assigned to the EBD Classroom at South Shore K-8 in the 2015-2016 school year. In the 2015-2016 school year, Kelley had been with the District nine years, with the last eight years at South Shore K-8.

4.6     During the 2015-2016 school year, T.S. started to become increasingly concerned about T.A.'s welfare at school.

4.7     T.A. would regularly cry in the mornings when the bus would come to pick him up from school saying he did not want to go.

4.8     T.A. also started pinching T.S. at home when T.S. was helping him with homework, which was a new behavior from him. When T.S. asked T.A. where he learned to pinch, he reported that Kelley would pinch him sometimes at school.

4.9     On multiple occasions T.A. came home with scratches or rugburns on his face.

COMPLAINT AND JURY DEMAND -4

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

When T.S. asked T.A. about the scratches or rugburns he reported that he was restrained by Kelley at school with his face held to the carpet.

4.10    When T.S. brought her concerns about restraint to the District, she was informed that this practice was necessary to restrain children and control behavior.

### January 20, 2016 Incident

4.11    The EBD classroom at South Shore K-8 has its own bathroom connected to the classroom for student use.

4.12    Kelley had set a classroom policy that if a student needed to cry, they could not stay in the regular classroom space and needed to go to the bathroom to cry. This policy was regularly announced to the IAs in the classroom and enforced by Kelley.

4.13    On January 20, 2016, Kelley took a book away from T.A., which caused him to become emotionally upset and he needed to cry. T.A. was 10 years old at this time.

4.14    Kelley told T.A. "If you have to cry, go into the bathroom." T.A. did not comply and Kelley escorted him into the bathroom by holding his arm.

4.15    Kelley then ordered the classroom instructional assistant (IA), Minnie Smith (Smith), to sit in front of the bathroom door to prevent T.A. from attempting to leave the bathroom.

4.16    T.A. was unable to leave the bathroom voluntarily.

4.17    When T.A. did attempt to leave the bathroom, Kelley grabbed him and forced him back inside the bathroom.

4.18    Kelley then became upset with T.A. for crying and attempting to leave the bathroom. As "discipline" she pushed T.A. to the ground in the bathroom and kicked him in the middle of his chest hard while he was lying on the ground. Kelley left T.A. on the floor of the bathroom and slammed the door on her way out.

4.19    Speech Language Pathologist, Emily DeCarlo (DeCarlo) entered the classroom at the same time these events occurred. DeCarlo says she heard what she described as a "commotion" in the bathroom. She stated from her position at the classroom door she could hear

COMPLAINT AND JURY DEMAND -5

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

Kelley yelling at a student in the bathroom and the student was crying. DeCarlo said as she walked toward the bathroom door [which is on the opposite end of the classroom], Kelley came out of the bathroom stating, "That boy needs to stop crying." DeCarlo said she asked Kelley if everything was "OK" and Kelley responded, "Yes ... and I don't need you looking at me like that." DeCarlo stated when Kelley walked back toward the bathroom door and opened it, she witnessed T.A. try to run but Kelley "caught him and dragged him back into the bathroom, threw him on the floor and kicked him as she slammed the door behind her."

4.20     DeCarlo and Smith both reported that they did not witness T.A. fighting, kicking, and/or hitting.

4.21     DeCarlo then approached Smith and told her, "I think [Kelley] needs help." Smith told DeCarlo she did not believe Kelley needed help because that's why [Smith] and the other IA were there. But DeCarlo noted that Smith was the only IA in the classroom at the time.

4.22     DeCarlo left the classroom, and initially did not know what to do, but ultimately decided to go back into the classroom to "check on the safety of [T.A.]." When she returned to the classroom, T.A. was seated at a table by himself. When T.A. looked up at DeCarlo, DeCarlo reported that Kelley told him to do his work. DeCarlo stated Kelley did not make eye contact with her and did not acknowledge her presence in the classroom.

**After the Incident**

4.23     When T.S. picked up T.A. from school on January 20, 2016, Kelley reported to T.S. that "there was a hiccup but we got through it together." Later, Kristin DeWitte (DeWitte), the school principal, called T.S. and advised her that "something happened" and DeCarlo had witnessed something and "called the police."

4.24     When T.S. asked T.A. what had happened, he informed her that Kelley, "slapped [him] in the face," "pushed [him] down," and "kicked him in the chest." T.S. waited a few hours and asked T.A. again what happened, and he repeated the same accounting of events.

4.25     The next day, DeCarlo stated she spoke with Kelley in the school's rotunda and asked, "Hey I have a question for you ... what happened yesterday?" In response, DeCarlo claimed

COMPLAINT AND JURY DEMAND -6

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

Kelley told her that T.A. wanted to get a book from another teacher but Kelley wouldn't let him go, so T.A. told Kelley that he had to go to the bathroom but left and returned with the book. DeCarlo says she told Kelley, "Guess that was punishment. . ." and "You know I have to report this." Kelley said "OK" and told DeCarlo that she has "all these idealistic ideas about Special Ed." DeCarlo replied, "Yes. . .  I do" then ended the conversation.

4.26    DeCarlo contacted law enforcement to report the incident and was interviewed by the Seattle Police Department at 8:00 am on January 26, 2016.

4.27    After DeCarlo's report, Principal DeWitte interviewed Kelley about the incident. Kelley informed Principal DeWitte that she would not deny the allegations against her.

4.28    Kelley was placed on paid administrative leave by the District on January 26, 2016. The District sent notice to Kelley that an investigation would take place.

4.29    The District initiated their own internal investigation of the allegations. During the course of the District investigation, Kelley acknowledged she had been trained on using proper restraint practices and she most likely did not use proper protocol. Additionally, Kelley acknowledged that T.A.'s placement in the EBD classroom at South Shore K-8 was an inappropriate placement for him as he was often triggered by the sensory overload of the classroom.

4.30    Kelley told the investigator that the two IA's assigned to the classroom did not have the necessary skills to help students in an escalated situation.

4.31    Principal DeWitte had previous concerns regarding the staff in the EBD classroom resorting to physical intervention too quickly.

4.32    Principal DeWitte had stated to the investigator for the District, that prior to DeCarlo's complaint, she had heard other District staff refer to Kelley as a "ticking time bomb."

4.33    Additionally, when Beth Thorson (Thorson), a special education administrator, was interviewed by the District, she stated since she has been in her position, she has noticed Kelley's stress levels were very high at times. Thorson said she worried about Kelley's verbal interactions with students but noted Kelley would refer to her interactions as being "culturally

COMPLAINT AND JURY DEMAND -7

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

responsive."

4.34    Geri Guerro (Guerro), the former Assistant Principal at South Shore K-8 and was Kelley's evaluation supervisor during the 2012-2013, 2013-2014, and 2014-2015 school years. Guerro claimed that when she would discuss concerns with Kelley, Kelley would raise her voice, become unreasonable, and then leave her office but eventually come back to apologize.

4.35    Guerro stated to a District investigator that on occasion she received reports that Kelley grabbed students.

4.36    Guerro also acknowledged describing Kelley as a "ticking time bomb" because if she had to have a "hard conversation" with Kelley, she would yell, "go off," then leave. Guerro stated she was unsure of how to approach Kelley about issues and would attempt to gauge her mood before having such conversations with her.

4.37    Other teachers and staff members at South Shore K-8 reported that Kelley believed that African American students needed to be treated differently than white students and that they specifically needed "harsh and stern discipline" in order to prevent them from being killed, jailed, or harassed as adults.

4.38    Disturbingly, white staff members describe Kelley's approach to discipline of African American students as a "one, two punch." Specifically, Phillis Holzworth stated,

> [Kelley] is stern when she approaches children who are not following the explicitly stated expectations. But that is the first of the one two punch. The second punch is when they are doing the right thing, they are slathered with love.

4.39    At the conclusion of the District's investigation, the District found there was clear and convincing evidence that Kelley kicked, pushed, and/or slapped T.A. after he attempted to leave the classroom bathroom on January 20, 2016.

4.40    On May 5, 2016, a copy of the Seattle Police Department report into the allegations against Kelley was faxed to the District.

4.41    On May 13, 2016, Kelley was charged with assault in Seattle Municipal Court and bail was set at $1,000. Kelley was granted a differed prosecution and her case was dismissed after

Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

completing several years of counseling and community service.

4.42   On August 17, 2016, the District's Assistant Superintendent of Human Resources, Clover Codd, issued Kelley a letter of reprimand for her actions on January 20, 2016.

4.43   T.S. was not notified of the assault charge, which the District was well aware of, nor the outcome of the investigation and decision not to terminate Kelley.

4.44   Kelley was permitted to return from paid administrative leave on August 25, 2016, and she returned to her teaching duties within the District.

4.45   T.A. immediately started to show signs of trauma after the January 20, 2016 incident. T.S. enrolled T.A. in mental health therapy shortly after the incident and T.A. has continued with outpatient mental health therapy for several years to address the trauma from the January 20, 2016 incident.

4.46   T.S. has also needed mental health therapy for her own trauma resulting from the January 20, 2016 incident. T.S. has been enrolled in weekly mental health therapy since this incident.

4.47   Although five years have passed since T.A. was assaulted by his teacher, T.A. continues to exhibit escalated levels of anxiety and aggression towards authority figures, especially teachers. T.A. remains in the District and has been restrained several times in the past five years despite his previous trauma.

4.48   Kelley remained a special education teacher within the District for several years after admitting to assaulting a 10-year-old African American student.

4.49   In November 2020, T.A.'s story was picked up and published in the local media.

4.50   Shortly after the article about the January 20, 2016 incident was released, Kelley was terminated for assaulting T.A. almost five years prior.

4.51   The District did not report Kelley to the Office of Professional Practices under the Office of the Superintendent of Public Instruction until after the reporting of T.A.'s by KUOW assault in November 2020.

COMPLAINT AND JURY DEMAND -9

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

# V.    CAUSES OF ACTION

## A. 42 U.S.C. § 1983: Denial of Equal Protection, Race Discrimination, and Failure to Train.

5.1    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.2    Under the Equal Protection Clause of the Fourteenth Amendment, T.A. has the right to equal access to an educational environment free from harassment and discrimination on the basis of race.

5.3    At all relevant times, Defendant had unconstitutional customs, policies, or practices of (a) failing to appropriately respond to reports of racial harassment and discrimination from staff members, including reports by Plaintiffs; (b) failing to enforce its policies prohibiting discrimination and harassment when victims are African American students; and (c) failing to adequately train Defendant's administrators and employees on how to recognize, prevent, and cease engaging in racial harassment and discrimination against its students

5.4    Defendant followed these unconstitutional customs, policies and practices not only with regard to T.A., but also with regard to racial harassment of other African American students at its schools.

5.5    Defendant's unconstitutional customs, policies, or practices constituted disparate treatment of T.A. based on his race, in violation of the Equal Protection Clause.

5.6    Defendant's customs, policies, and practices for responding to reports of racial harassment and discrimination by staff were so clearly inadequate that they give rise to a reasonable inference that Defendant consciously acquiesced in the harassment and discrimination.

5.7    Defendant violated T.A.'s right to equal protection of the laws on the basis of his race by acting with deliberate indifference to reports of T.A.'s harassment and assault, as well as

COMPLAINT AND JURY DEMAND -10

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

the racially hostile education environment T.A. suffered because of Defendant's failure to take meaningful corrective action. Defendant's deliberate indifference included, without limitation:

a) Ignoring or minimizing a racial animosity Kelley openly held in her approach to discipline of African American students;

b) Refusing to take meaningful action to address reports of race-based physical assaults against T.A., an African American student;

c) Creating a hostile educational climate that tolerates racial harassment and discrimination, including bodily harm of the same to T.A.;

d) Failing to appropriately discipline staff who subjected T.A. to racial harassment or discrimination;

e) Failing to take meaningful action to correct the conditions causing the racial harassment and discrimination and to prevent its recurrence; and

f) Failing to provide adequate training for its administrators and employees to prevent and address racial harassment and discrimination despite having notice that its procedures were inadequate and resulting in a violation to T.A.'s constitutional rights.

5.8     Defendant's actions and decisions have deprived T.A. of the privileges and immunities secured by the U.S. Constitution and laws, in violation of 42 U.S.C. § 1983.

5.9     As a direct and proximate result of Defendant's violation of Plaintiffs' equal protection rights under the Fourteenth Amendment, T.A. suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including but not limited to: emotional distress; fear, anxiety and trauma; lost future earnings and earning capacity; and other damages.

5.10   As a result of Defendant's equal protection violation, Plaintiffs are also entitled to

COMPLAINT AND JURY DEMAND -11

their attorneys' fees and costs.

**B.  Title VI, 42 U.S.C. § 200d: Race Discrimination**

5.11    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.12    42 U.S.C. § 2000d, commonly referred to as Title VI, and its implementing regulations prohibit discrimination in a federally funded school on the basis of a student's race.

5.13    Specifically, 42 U.S.C. § 2000d provides that "No person in the United States shall, on the ground of race, color, or national origin, be exclude from participation in be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

5.14    Defendant is a recipient of federal funds.

5.15    T.A. was subjected to harassment, discrimination, and disparate treatment on the basis of his race. Specifically, T.A. was subjected to discriminatory discipline which included harsh levels of treatment for African American students.

5.16    Defendant had notice of the racial hostility occurring at South Shore K-8. Kelley was seen as a "ticking time bomb" and a number of incidents involving Kelley were reported to the school administration. Defendant failed to take remedial measures to prevent further discrimination of T.A. and other African American students allowing the behavior to continue and permeate throughout the school.

5.17    Racial hostility towards African American students permeated (and continues to permeate) the District of such a severity and pervasiveness as to significantly alter the conditions of T.A.'s educational environment resulting in a physical attack and injury and thereby denying T.A. equal access to the school resources and opportunities.

COMPLAINT AND JURY DEMAND -12

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.18   Defendant, despite actual knowledge and adequate opportunity to learn of this misconduct, failed to act promptly to remedy the harassment, discrimination, and disparate treatment to T.A.

5.19   As a direct result of the actions and conduct of the Defendant, Plaintiffs suffered and continue to suffer emotional distress, loss of companionship, loss of educational opportunities, and other damages.

5.20   As a result of Defendant's violation, Plaintiffs are entitled to their attorneys' fees and costs.

## C.  Americans with Disabilities Act: Disability-Based Discrimination

5.21   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.22   With respect to the District's academic and other programs, T.A. is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, in that he has a physical or mental impairment that substantially limits their ability to perform one or more major life activities and who, with or without a reasonable modification of the District's general education program, meets the essential eligibility requirements for the receipt of educational and other services provided by the School District. 42 U.S.C. §§ 12102 and 12131(2). The Seattle School District is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 1213(1)(B).

5.23   The District enjoys no absolute, qualified, Eleventh Amendment or other immunity with respect to the Plaintiff's claims under the ADA.

5.24   The District failed T.A. by a) knowingly placing him in an inappropriate classroom for his disability-related needs; b) failed to provide him with adequate disability-related supports

COMPLAINT AND JURY DEMAND -13

in the classroom; and c) placing him in a classroom with a teacher known to "grab students" who did in fact assault T.A. As such, District violated the non-discrimination mandate set forth in the ADA and its implementing regulations. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.1010 et seq. 56.

5.25   Providing T.A. the academic and related modifications to which he was entitled would not have constituted an undue burden or hardship for the District.

### D. Section 504 the Rehabilitation Act of 1973 (29 U.S.C. § 794) (Section 504): Disability-Based Discrimination

5.26   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.27   With respect to District's academic and other programs, T.A. is a qualified individual with a disability within the meaning of Section 504 in that he has a physical or mental impairment that substantially limits his ability to perform one or more major life activities and they meet the essential eligibility requirements for the receipt of educational and other services provided by the District. (29 U.S.C. § 705(20); 34 C.F.R. § 104.3(j).

5.28   Section 504 bars all federally funded entities (governmental or otherwise) from discriminating on the basis of disability.

5.29   Defendant receives federal financial assistance and is covered by Section 504.

5.30   The District enjoys no absolute, qualified, Eleventh Amendment or other immunity with respect to the Plaintiff's claims under Section 504.

5.31   By failing to provide T.A. the academic and related modifications (or reasonable accommodation) to which he was entitled, the District violated the non-discrimination mandate set forth in Section 504 of the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 794; 34 C.F.R. §§ 104.1 et seq.; 34 C.F.R. §§ 104.41-104.47.

5.32   Providing T.A. the academic and related modifications to which he was entitled

COMPLAINT AND JURY DEMAND -14

would not have constituted an undue burden or hardship for the District.

5.33    The District knowingly, deliberately and wrongfully discriminated against T.A. in violation of Section 504 by failing to provide him with an education in the regular educational environment with the use of supplementary aids and services, and by segregating him for several years from peers who reflected their experience, intelligence, and potential.

5.34    During the period 2015 through the present, the District knowingly, deliberately and repeatedly failed to provide T.A. with an educational program and related aids and services that were designed to meet his individual education needs as adequately as the needs of non-disabled students of the District in violation of Section 504; 34 C.F.R. §§ 104.4 and 104.3, each of which authoritatively construe the statute.

5.35    During the period 2015 through the present, the District knowingly, deliberately and repeatedly failed to determine the educational and related services necessary to appropriately meet T.A.'s individual needs, including any good faith exploration of possible accommodations needed to provide them with meaningful access to public education.

5.36    During the period 2015 through the present, the District knowingly, deliberately and repeatedly failed to assure that the programs and services provided to T.A. resulted in significant learning and conferred a meaningful benefit.

5.37    During the period of 2015 through the present, the reasonable accommodations necessary to provide T.A. with meaningful access to education were available to the District but were never offered or provided.

5.38    During the period of 2015 through the present, the District deliberately interfered with parental participation in T.A.'s educational programming by withholding information regarding abuse and investigations from his parent.

COMPLAINT AND JURY DEMAND -15

5.39    During the years at issue here, the District wrongfully and deliberately excluded T.A. from and denied him access to related services through the District, including, behavioral therapy, social skills training, parental training, and psychological therapy.

5.40    Numerous District administrators, officials, and employees had the authority and the responsibility to rectify the District's failures, as set forth above, but wrongfully failed to take appropriate corrective actions.

5.41    At all relevant times, the Defendants, collectively, had knowledge it was substantially likely that their acts and failures to act, as set forth in the preceding paragraphs of this Complaint, would harm T.A.'s federally protected rights to be free from discrimination, and to have meaningful access to education and reasonable accommodation with respect to his educational disability. Despite this knowledge, the Defendants failed to act upon that likelihood, thereby causing severe and permanent injury to T.A.

5.42    The District's deliberate indifference to T.A.'s federally protected rights, as stated above, resulted in discrimination against T.A. and denied him reasonable accommodation for his educational disability and meaningful access to public education in Washington, thereby entitling Plaintiff to recover special and general damages from the District under Section 504 in an amount to be shown at trial.

5.43    The District's deliberate indifference in violating T.A.'s rights under Section 504 was a substantial factor in causing T.A. to suffer irreversible personal injury and harm, including profound and irreparable injury to his behavior and social functioning.

5.44    Providing T.A. the academic and related modifications to which he was entitled would not have constituted an undue burden or hardship for the District.

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

### E. 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment – Unlawful Seizure

5.45   Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.46   The Federal Civil Rights Act (42 U.S.C. § 1983) authorizes an individual to bring suit against any "person" who, acting under color of law, deprives the individual of his federal constitutional or statutory rights.

5.47   At all material times, Defendants were acting under color of law.

5.48   By isolating T.A. in a bathroom with a staff member blocking the exit, prohibiting him from coming out of the bathroom volitionally numerous times during the 2015-2016 school year, Defendants violated T.A.'s Fourth and Fourteenth Amendment rights to be free from an unreasonable seizure.

5.49   Kelley's practice of forcing students in the bathroom for crying was part of a longstanding practice or custom which constitutes the standard operating procedure of the District.

5.50   The District allowed Kelley to continue this custom and practice of isolating students in the bathroom against their will.

5.51   The Defendant's conduct was the result of deliberate choice.

5.52   The Defendant's conduct was ratified by the District and its Superintendent.

5.53   T.A. was injured by the unconstitutional policies, customs and procedures implemented and followed by Defendant in violation of the civil rights of students as provided by the 4th Amendment and Section 1 of the 14th Amendments to the Constitution of the United States and Defendant is liable therefore under 42 U.S.C. §§ 1983 and 1988.

5.54   By engaging in the acts described herein, Defendant, acting under color of law and

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

with deliberate indifference, violated the Plaintiffs' rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

**F. Washington Law Against Discrimination (WLAD) -- Disability and Racial Discrimination**

5.55   Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.56   T.A. is an African American student with a disability within the meaning of the Washington State Law Against Discrimination (WLAD), Revised Code of Washington 49.60.010 *et.seq.*

5.57   The District operates a place of public accommodation, as defined by Revised Code of Washington Section 49.60.040.

5.58   The District's response to the discriminatory educational environment was neither reasonably prompt nor adequate and constituted an unfair practice under the WLAD.

5.59   Defendant violated T.A.'s right to be free from discrimination based on race and disability by acting with deliberate indifference to reports of T.A.'s harassment and assault, as well as the racially hostile education environment T.A. suffered because of Defendant's failure to take meaningful corrective action. Defendant's deliberate indifference included, without limitation:

a) Refusing to take meaningful action to address reports of a physical assault against T.A., an African American student with a disability;

b) Creating a hostile educational climate that tolerates racial harassment and disability discrimination, including bodily harm of the same to T.A.;

c) Failing to appropriately discipline staff who subjected T.A. to racial harassment or disability discrimination;

COMPLAINT AND JURY DEMAND -18

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

d) Failing to take meaningful action to correct the conditions causing the racial harassment and disability discrimination and to prevent its recurrence; and

e) Failing to provide adequate training for its administrators and employees to prevent and address racial harassment and disability discrimination.

5.60    The District's failure or refusal to provide equal education opportunities to T.A., as an African American student with a disability, constitutes an unfair and discriminatory practice under WLAD.

5.61    The District violated WLAD by denying T.A. equal opportunity and access to its programs and services.

5.62    As a direct and proximate result of these violations of T.A.'s clearly established rights, T.A. has suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

5.63    Plaintiff is entitled to reasonable attorney's fees pursuant to WLAD.

**G. Washington Common Law -- Negligence**

5.64    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.65    Defendant stood *in loco parentis* to T.A.

5.66    The District and its Board of Trustees are vicariously liable for the negligent acts and/or omissions by its employees against T.A.

5.67    Defendant breached its duty to exercise reasonable care to educate, socialize, assist, protect and serve T.A.

5.68    Additionally, Defendant has a duty to exercise reasonable care to avoid from harming all foreseeable plaintiffs. Defendant a duty to exercise reasonable care in the hiring,

COMPLAINT AND JURY DEMAND -19

training, and supervision of their employees and agents. Defendant has a duty to use reasonable care in administering discipline to students, with whom they have a special relationship.

5.69    Defendant's acts of hiring, retraining, failing to supervise, or failing to train Kelley and other staff members was unreasonable and breached the standard of care.

5.70    As a direct and proximate result of Defendant's breach of duties and resulting negligence, T.A. suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

**H. Washington Common Law -- Negligent Hiring, Training and Supervision**

5.71    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.72    The District and its Board of Trustees had non-delegable common law duties to exercise reasonable care in the selection, training, supervision and/or retention of the individual persons they employed as administrators and educators to educate, serve and protect students.

5.73    Defendant breached its non-delegable common law duties to exercise reasonable care in the selection, training, supervision and/or retention of Kelley and other persons they employed to educate, serve and protect students. Specifically, the District failed to

a)    Ensure staff working with T.A. were appropriately trained on how to support students with disabilities;

b)    Ensure staff were not providing the same level of care and education to all students regardless of race;

c)    Appropriately investigate Kelley after she was accused of misconduct;

d)    Take necessary disciplinary action against Kelley in a timely manner;

COMPLAINT AND JURY DEMAND -20

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

e)   Ensure that staff at South Shore were appropriately communicating with parents regarding investigations and incidents of restraint and isolation;

f)   Ensuring staff at South Shore were appropriately trained on how to document incidents of restraint and isolation; and

g)   Supervising staff at South Shore to ensure that State guidelines regarding documentation of restraint and isolation were being followed.

5.74   Defendant failed to exercise reasonable care to protect third parties from the foreseeable wrongful acts of its employees.

5.75   Defendant failed to control their employees so as to prevent intentional harm or an unreasonable risk of harm to others like T.A.

5.76   As a direct and proximate result of Defendant's failures, T.A. has suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

**I. Washington Common Law -- False Imprisonment**

5.77   Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.78   The District intended to confine T.A. within a limited area through physical force when staff restrained him and isolating him when T.A. was not posing an immediate threat of harm to himself or others.

5.79   All individual staff members were acting within the course and scope of their employment with the District at the time of the above-described acts and omissions, and in furtherance of the District's business

5.80   The District's affirmative conduct caused a confinement of T.A.

COMPLAINT AND JURY DEMAND -21

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.81    To the extent that the Defendant argues that their actions were justified, Plaintiffs assert that Defendant's actions were unreasonable and outside the scope of Wash. Rev. Code § 28A.600.485.

5.82    T.A. was aware that he was confined and suffered bodily harm as a result of his confinement.

5.83    T.A. did not consent to the confinement.

5.84    The confinement of T.A. was unlawful under Wash. Rev. Code § 28A.600.485.

5.85    As a direct and proximate result of these violations, Plaintiffs suffered damages.

**J. Washington Common Law --Assault and Battery**

5.86    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.87    On January 20, 2016, Kelley intended a harmful or offensive contact with T.A. when she kicked him in the chest after he was pushed to the ground. Defendant, through its employees, intended to cause fear and apprehension of an imminent harmful or offensive contact and committed acts that resulted in T.A.'s fear or apprehension of such contact.

5.88    Defendant through its employees intended to touch T.A. in a harmful or offensive manner and committed acts that resulted in harmful or offensive contact with T.A.

5.89    T.A. did not consent to the contact.

5.90    The individual staff employed by the District were acting within the course and scope of their employment with the District at the time of the above-described acts and omissions, and in furtherance of the District's business. Defendant is vicariously liable for the negligence of the individual staff members under *respondeat superior*.

5.91    The contact with T.A. on this occasion would offend a reasonable sense of

COMPLAINT AND JURY DEMAND -22

personal dignity.

**K. Washington Common Law -- Outrage**

5.92    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.93    T.A. was a vulnerable elementary aged child at the time he was assaulted by his special education teacher and forced to remain in a bathroom.

5.94    Defendant's acts and omissions were so outrageous as to shock the conscience of a reasonable person in society. Defendant's actions were so unreasonable, cruel, and unusual as to amount to actionable outrage. These acts proximately caused T.A. to suffer significant physical harm, mental, emotional, and cognitive distress, as well as special damages.

**L. Washington Common Law -- Negligent Infliction of Emotional Distress**

5.95    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.96    Defendant negligently inflicted emotional distress on T.A. by creating a severely distressing educational environment beyond what a reasonable person would be expected to endure.

5.97    On information and belief, the Plaintiffs' mental anguish and emotional distress would not have occurred, had the Defendant and its employees exercised the proper standard of care.

**M.  Wash. Rev. Code § 4.24.010 --Loss of Consortium**

5.98    Plaintiffs Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.99    Plaintiff T.S. is the natural parent of T.A. and has supported him since birth.

COMPLAINT AND JURY DEMAND -23

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.100 As a direct and proximate result of the Defendant's tortious conduct, T.S. has suffered a loss of consortium with her son, resulting in general and special damages in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

6.1    Plaintiffs request the following relief as follows:

6.2    For general and special damages to Plaintiffs for harm suffered, permanent injuries, opportunities denied, and deprivation of rights in an amount to be proven at trial;

6.3    Plaintiffs seeks general damages for extreme mental suffering and emotional distress, as well as special damages, in an amount to be proven at trial, all of which were directly and proximately caused by Defendant's acts and omissions.

6.4    An award of Plaintiff's expenses, costs, and reasonable attorneys' fees under 42 U.S. C. §1988 and any other applicable provision of federal or state law;

6.5    An award of punitive damages under applicable provisions of federal law.

6.6    Plaintiffs pray for such other equitable or legal relief as the Court deems just.

## VII. RESERVATION OF RIGHTS

7.1    Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

COMPLAINT AND JURY DEMAND -24

## VIII. JURY DEMAND

8.1    Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

Dated this 9th day of May, 2021.

s/Shannon McMinimee
Shannon M. McMinimee, WSBA No. 34471
Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101
Shannon@cedarlawpllc.com

s/Whitney Hill
Whitney Hill, WSBA No. 53715
Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101
Whitney@cedarlawpllc.com

Attorneys for Plaintiffs

COMPLAINT AND JURY DEMAND -25

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101