1

2

3                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
4                              AT SEATTLE

5    T.S., individually and on behalf of T.A.,
     a minor,
6

7                    Plaintiff,
                                                    C21-0617 TSZ
8         v.
                                                    ORDER
9    SEATTLE SCHOOL DISTRICT NO. 1,

10                   Defendant.

11        THIS MATTER comes before the Court on a motion for summary judgment,

12   docket no. 23, brought by defendant Seattle School District (the "District").  Having

13   reviewed all papers filed in support of the motion,[1] the Court enters the following order.

14   _____

15   [1] The District filed its motion for summary judgment on November 10, 2022, and noted it for
     consideration on December 2, 2022.  On December 1, 2022, plaintiff's counsel sought an
16   extension of time to file a response, and the Court renoted the District's motion to January 13,
     2023.  See Minute Order (docket no. 27).  On January 4, 2023, plaintiff's attorney filed another
17   motion for extension, which was stricken because it was not accompanied by a supporting
     declaration or physician's letter.  See Minute Order (docket no. 33).  On January 10, 2023,
18   plaintiff's lawyer renewed the motion for extension, and the Court renoted the District's motion
     for summary judgment to March 10, 2023.  See Minute Order (docket no. 38).  In granting the
19   second motion for extension, the Court indicated that no further extension would be granted.  Id.
     at ¶ 1.  Plaintiff's counsel then sought two more extensions, each time specifying a date certain
20   on which a response would be filed, but no brief was filed, and the extension requests were
     stricken as moot.  See Minute Order (docket no. 44).  Nevertheless, the Court indicated that it
21   would consider any response filed before the noting date of the District's motion.  Id. at ¶ 2.  The
     noting date has now passed, and no response has been filed.  As a result, the Court will decide
22   the motion for summary judgment on the basis of the pleadings and the materials submitted by
     the District.

23

ORDER - 1

**Background**

T.A. is African American and autistic.  Compl. at ¶ 3.2 (docket no. 1).  Plaintiff T.S. is T.A.'s mother.  *Id.* at ¶ 1.1.  This case concerns events occurring on January 20, 2016, when T.A. was nine years old.  On that day, T.A.'s teacher, Tamara Kelley, took a book away from T.A., upsetting him, and then told him to go to the bathroom if he needed to cry.  *See id.* at ¶¶ 4.13–4.14.  According to the operative pleading, when T.A. did not comply with Kelley's direction, Kelley escorted T.A. by holding his arm, would not allow T.A. to leave the bathroom, became enraged by T.A.'s crying and attempts to exit, and then pushed T.A. to the ground and kicked him in the middle of his chest.  *Id.* at ¶¶ 4.14–4.18.  As a result of the incident, the District placed Kelley on administrative leave and subsequently issued a letter of reprimand; Kelley was also prosecuted in Seattle Municipal Court for assault.  *Id.* at ¶¶ 4.28 & 4.41–4.42.  In November 2020, the local media reported about T.A.'s experiences and, shortly thereafter, Kelley was terminated.  *Id.* at ¶¶ 4.49–4.50.  Plaintiff commenced this litigation on May 9, 2021.  The District is the sole defendant; plaintiff asserts no claims against Kelley.

The District seeks dismissal with prejudice of all of plaintiff's claims, which include (A) denial of equal protection, racial discrimination, and failure to train, as violations of 42 U.S.C. § 1983; (B) racial discrimination as a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (C) disability-based discrimination as a violation of the Americans with Disabilities Act ("ADA"); (D) disability-based discrimination as a violation of § 504 of the Rehabilitation Act of 1973; (E) unlawful seizure as a violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments);

1  (F) racial and disability-based discrimination as a violation of Washington's Law Against

2  Discrimination (the "WLAD"); (G) negligence; (H) negligent hiring, training, and

3  supervision; (I) false imprisonment; (J) assault and battery; (K) outrage; (L) negligent

4  infliction of emotional distress; and (M) loss of consortium.  _See_ Compl. at §§ V(A)–(M).

5  Claims G through L are pleaded under Washington common law.  _See id._  Claim M for

6  loss of consortium, which is alleged pursuant to RCW 4.24.010, is the only cause of

7  action brought by T.A.'s mother (T.S.) on her own behalf; all other claims are asserted on

8  behalf of T.A.  _See id._

9  **Discussion**

10 **A.**    **Summary Judgment Standard**

11         The Court shall grant summary judgment if no genuine issue of material fact exists

12 and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

13 The moving party bears the initial burden of demonstrating the absence of a genuine issue

14 of material fact.  _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).  A fact is material if

15 it might affect the outcome of the suit under the governing law.  _See Anderson v. Liberty_

16 _Lobby, Inc._, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

17 adverse party must present "affirmative evidence," which "is to be believed" and from

18 which all "justifiable inferences" are to be favorably drawn.[2]  _Id._ at 255 & 257.  When

19

_____

20 [2] Given the lack of response to the District's motion, the Court may consider facts presented by
   the District as undisputed.  _See_ Fed. R. Civ. P. 56(e)(2).  The Court may not, however, grant

21 summary judgment "by default," but rather must evaluate whether the District is entitled to
   judgment as a matter of law.  _See_ Fed. R. Civ. P. 56(e)(3); _see also Heinemann v. Satterberg_, 731

22 F.3d 914 (9th Cir. 2013).

23

1  the record, taken as a whole, could not, however, lead a rational trier of fact to find for

2  the non-moving party on matters as to which such party will bear the burden of proof at

3  trial, summary judgment is warranted.  *See* *Matsushita Elec. Indus.  Co. v. Zenith Radio*

4  *Corp.*, 475 U.S. 574, 587 (1986); *see also* *Celotex*, 477 U.S. at 322.

5  **B.**     **T.S.'s Claim for Loss of Consortium**

6          Washington courts recognize loss of consortium as a "separate and independent

7  claim," which accrues when the plaintiff "knew or should have known the essential

8  elements" of the claim.  *Green v. Am. Pharm. Co.*, 136 Wn.2d 87, 101–02, 960 P.2d 912

9  (1998); *see* *Ginochio v. Hesston Corp.*, 46 Wn. App. 843, 846–48, 733 P.2d 551 (1987)

10 (explaining that, when alleged in the context of a wrongful-death action, loss of

11 consortium is derivative and merely an element of damages, but is otherwise a separate,

12 independent cause of action); *see also* RCW 4.24.010(1)&(2) (a parent "who has

13 regularly contributed to the support of his or her minor child" may maintain "an action as

14 plaintiff for the injury . . . of the child," and recover *inter alia* damages "for the loss of

15 love and companionship of the child").  The limitations period for a loss-of-consortium

16 claim is three (3) years.  *See* RCW 4.16.080(2).  Based on the facts alleged in the

17 Complaint, the Court concludes, as a matter of law, that (i) T.S. "knew or should have

18 known" the elements of her loss-of-consortium claim on January 20, 2016, when T.A.

19 was allegedly maltreated by his teacher, (ii) T.S. did not commence this action within

20 three years, and (iii) T.S.'s loss-of-consortium claim is time barred.  The District's

21 motion for summary judgment is GRANTED as to the sole claim that T.S. brings on her

22 own behalf, and Claim M for loss of consortium is DISMISSED with prejudice.

23

1

**C.      Claims Brought on Behalf of T.A.**

2

**1.      Federal Claims Requiring Exhaustion**

3

The Individuals with Disabilities Education Act ("IDEA") provides that

4

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).  Section 1415(*l*) requires exhaustion when a lawsuit seeks relief for the denial of a free appropriate public education ("FAPE"), without regard to the statutes under which the claims are brought.  *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 168–69 (2017).  To evaluate whether § 1415(*l*)'s exhaustion mandate applies, the Court must look at the "substance" of, rather than the "labels" used in, the operative pleading, and determine the "crux" or "gravamen" of the complaint, "setting aside any attempts at artful pleading."  *Id.* at 169.  Indeed, a plaintiff need not include IDEA phrases or related acronyms (for example, FAPE or individualized education program or plan ("IEP")) to be viewed as "in essence contesting the adequacy of a special education program."  *Id.* at 170 (observing that "a 'magic words' approach would make § 1415(*l*)'s exhaustion rule too easy to bypass").

According to the *Fry* Court, the following inquiries provide "clues" concerning whether § 1983, ADA, Rehabilitation Act, or other federal claims seek redress available under the IDEA:  (i) whether the plaintiff could have brought "essentially the same claim

if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library"; and (ii) whether "an *adult* at the school—say, an employee or visitor—[could] have pressed essentially the same grievance." *Id.* at 171 (emphasis in original). If so, then the complaint is unlikely to concern a FAPE, and exhaustion is not necessary. In *Fry*, the Supreme Court described, as an example of a non-FAPE claim, a challenge, by either a child or an adult, to the lack of access ramps for wheelchairs, which could be asserted against any public facility, not just a school. *Id.* at 171–72. In contrast, § 1415(*l*)'s preclusive effect would be brought "into play" in a hypothetical suit involving the failure to provide tutoring in mathematics, which public theaters and libraries are not generally expected to offer, and which adult employees and visitors do not usually seek from institutions governed by the IDEA. *Id.* at 172–73.

The Court concludes that certain § 1983 claims, as well as the Title VI, ADA, and Rehabilitation Act claims, asserted on behalf of T.A. are substantively indistinguishable from an IDEA/FAPE claim and are therefore barred for failure to exhaust administrative remedies. The § 1983 claims pleading denial of equal protection, racial discrimination, and failure to train are premised on the theory that T.A. "has the right to equal access to an educational environment free from harassment and discrimination on the basis of race." Compl. at ¶ 5.2. The District is accused of "deliberate indifference" with respect to the racial animosity displayed in Kelley's approach to disciplining African American students and the creation of a "hostile educational climate" that tolerates racial harassment and discrimination. *Id.* at ¶ 5.7. The Title VI claim alleges the District had notice that Kelley was a "ticking time bomb" and failed to take remedial measures to

1   prevent discriminatory discipline of T.A. and other African American students.  *Id.* at

2   ¶¶ 5.15–5.18.  In the ADA claim, the District is reproached for (a) placing T.A. in "an

3   inappropriate classroom" given his "disability-related needs," (b) not providing T.A. with

4   "adequate disability-related supports in the classroom," and (c) assigning T.A. to a

5   teacher "known to 'grab students.'"  *Id.* at ¶ 5.24.  Under the Rehabilitation Act, the

6   District is faulted for failing to provide T.A. with "an educational program and related

7   aids and services that were designed to meet his individual education needs as adequately

8   as the needs of non-disabled students of the District."  *Id.* at ¶ 5.34.  The District is

9   alleged to have not offered reasonable accommodations to T.A., excluded T.A. from

10  related services, including behavioral and psychological therapy and social skills training,

11  and withheld information about T.A.'s abuse from his parent.  *Id.* at ¶¶ 5.35–5.39.

12      All of these federal claims relate to T.A.'s educational environment, and they are

13  not the type of grievances to be brought on behalf of minors against public facilities other

14  than schools or by adults in their own capacity against schools receiving federal funds.

15  Having failed to exhaust the procedures outlined in the IDEA, plaintiff cannot proceed on

16  substantively similar claims under § 1983, Title VI, the ADA, or the Rehabilitation Act.

17  Thus, as to Claims A, B, C, and D, the District's motion for summary judgment is

18  GRANTED, and those claims are DISMISSED, but without prejudice to the IDEA

19  proceeding initiated in August 2022.[3]

20

21  _____

22  [3] On August 11, 2022, over a year after the District pleaded failure to exhaust administrative remedies as an affirmative defense, *see* Answer at 25 (docket no. 10), counsel for T.A.'s mother sent a letter to the District's Superintendent requesting a due process hearing.  *See* Ex. 5 to

23

### 2.   <u>Section 1983 / Unlawful Seizure Claim</u>

The District may not be held liable under § 1983 on a respondeat superior theory. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.C.</u>, 436 U.S. 658, 691 (1978); <u>see also</u> <u>Ulrich v. City & Cnty. of San Francisco</u>, 308 F.3d 968, 984 (9th Cir. 2002).  Instead, the District's liability must be premised on one of four theories:  (i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted; (ii) an unconstitutional action by an official with final policy-making authority; (iii) ratification by an official with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a failure to adequately train employees that amounts to "deliberate indifference" concerning the constitutional right at issue.  <u>See</u>, <u>e.g.</u>, <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989).

---

Rusimovic Decl. (docket no. 24-5).  In the letter, the attorney indicated that T.A. no longer resides within the District's boundaries and has enrolled in the Renton School District.  <u>Id.</u>  The letter asserted that the District had violated its obligations under the IDEA by "[n]ot providing [T.A.] with FAPE at any point during his enrollment within the District," and sought declaratory and compensatory relief.  <u>Id.</u>  In <u>Fry</u>, the Supreme Court identified the procedural history of the parties' dispute as another factor to consider in deciding whether § 1415(*l*) barred unexhausted federal claims.  <u>See</u> 580 U.S. at 173.  A prior pursuit of administrative remedies under the IDEA is "strong evidence" that a plaintiff's claim involves FAPE denial, but a "move <u>to</u> a courtroom" might also arise "from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely."  <u>Id.</u> (emphasis added).  In this matter, the "move" was <u>from</u> a courtroom to the IDEA forum, and it occurred during the course of this litigation, after the District asserted exhaustion as a defense.  Under these circumstances, the Court treats the August 2022 letter as an acknowledgement that the "gravamen" of Claims A–D is the District's alleged failure to provide T.A. with a free appropriate public education.  In dismissing plaintiff's § 1983 (equal protection), Title VI, ADA, and Rehabilitation Act claims for failure to exhaust, the Court makes no ruling concerning the merits of any claim under the IDEA.

The Complaint in this matter mentions only the first (longstanding practice or custom) and third (ratification) theories of *Monell* liability, pleading them in conclusory fashion.  *See* Compl. at ¶¶ 5.49–5.50 & 5.52.  T.A. is alleged to have been unlawfully seized when Kelley isolated him in a bathroom and prevented him from exiting.  *Id.* at ¶ 5.48.  The operative pleading asserts that Kelley's conduct "was part of a longstanding practice or custom" constituting the "standard operating procedure of the District," and that the District ratified Kelley's mistreatment of T.A.  *Id.* at ¶¶ 5.49 & 5.52.  The Complaint, however, also acknowledges that Kelley was reprimanded for her actions and subsequently terminated.  *Id.* at ¶¶ 4.42 & 4.50.  Consistent with these factual allegations, the District has provided the letter of reprimand issued in August 2016 by Clover Codd, Assistant Superintendent of Human Resources for the District, which informed Kelley that her behavior violated the District's policies, was "unacceptable and cannot be tolerated," and might result in further discipline or termination if repeated.  *See* Ex. 3 to Rusimovic Decl. (docket no. 24-3).  Based on the undisputed facts, the Court concludes, as a matter of law, that Kelley's allegedly unlawful seizure of T.A. was not performed pursuant to any longstanding practice or custom of the District and was not ratified by the District.  No grounds for *Monell* liability on the part of the District exists, and Claim E is DISMISSED with prejudice.

### 3.    **Intentional Tort Claims**

With respect to the three intentional tort claims asserted on behalf of T.A. (false imprisonment, assault and battery, and outrage), the District cannot be held vicariously liable.  An employer cannot be held vicariously liable for an employee's tort if the

1  employee's conduct was (i) "intentional or criminal," and (ii) "*outside the scope of*

2  *employment*."  *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53, 59 P.3d 611 (2002) (emphasis

3  in original, quoting *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 56, 929 P.2d 420

4  (1997)).  The undisputed facts establish that Kelley's conduct, on which the claims of

5  false imprisonment, assault and battery, and outrage are based, was intentional and

6  criminal, as well as outside the scope of her employment; it violated the District's written

7  policies and Kelley was reprimanded, as well as prosecuted, for the behavior.  *See* Ex. 3

8  to Rusimovic Decl. (docket no. 24-3); *see also* Compl. at ¶¶ 4.41.  As to Claims I, J, and

9  K, the District's motion for summary judgment is GRANTED, and those claims are

10  DISMISSED with prejudice.

11     **4.**     **Negligence Theories**

12          **a.**     **Vicarious Liability**

13          For the same reasons that the District cannot be held vicariously liable for any

14  intentional torts, it cannot be held vicariously liable in negligence; Kelley's actions were

15  not within the scope of her employment.  *See Robel*, 148 Wn.2d at 52–53 (citing

16  *Dickinson v. Edwards*, 105 Wn.2d 457, 469, 716 P.2d 814 (1986) (holding that an

17  employer is liable on respondeat superior grounds if the proximate cause of the injury

18  occurred while the employee was acting within the scope of his employment)).  In this

19  matter, any negligence-based claim must be premised on the District's own conduct.  To

20  the extent that Claim G pleads that the District is "vicariously liable for the negligent acts

21  and/or omissions" of its employees, Compl. at ¶ 5.66, the District's motion for summary

22  judgment is GRANTED, and the negligence claim is DISMISSED with prejudice.

23

b.   **Negligent Hiring, Retention, Training, and/or Supervision**

Claim G seems otherwise duplicative of Claim H, which alleges that the District was negligent in hiring, retaining, training, and/or supervising Kelley and other staff.  *See* Compl. at ¶¶ 5.72–5.75.  An employer may be held liable for negligent selection and/or retention of an employee who is "incompetent or unfit" if "the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee."  *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 356, 423 P.3d 197 (2018).

An investigative report prepared after the incident on January 20, 2016, by Stefani Coverson, Labor and Employee Relations Manager for the District (the "Report"),[4] indicates as follows.  As of the 2015–2016 school year, Tamara Kelley had worked for the District for nine years, the last eight of which were at South Shore K-8.  Report at 3 (docket no. 45 at 6); *see* Compl. at ¶ 4.5.  South Shore K-8 Principal Kristin DeWitte told Coverson that she had heard another staff member refer to Kelley as a "ticking time bomb," but that she did not herself have any concerns about Kelley before the events of January 20, 2016.[5]  Report at 5 (docket no. 45 at 8); *see* Compl. at ¶ 4.32.  Geri Guerro,

---

[4] In support of its motion for summary judgment, the District provided excerpts of Coverson's Report.  *See* Ex. 2 to Rusimovic Decl. (docket no. 24-2).  In light of the Complaint's citation to the Report as the source for various factual allegations, as well as the District's responsive pleading, which repeatedly stated that the "document speaks for itself," *see* Answer at ¶¶ 4.19–4.25, 4.27, 4.29–4.36, & 4.39 (docket no. 10), the Court directed the District to file a complete copy of the Report.

[5] DeWitte also noted, however, that "Kelley was already going through a difficult time when the alleged incident occurred due to the death of her nephew," and DeWitte "wished she had encouraged Kelley to take some time off of work."  Report, Ex. 2 to Rusimovic Decl. (docket

1   a former assistant principal, told Coverson that she had received reports about Kelley

2   "grabb[ing] students," but had not heard any complaint from a parent.  Report at 9

3   (docket no. 45 at 12); <u>see</u> Compl. at ¶ 4.35.  Guerro explained to Coverson that she had

4   used the "ticking time bomb" metaphor because, if Guerro "had to have a 'hard

5   conversation' with Kelley, [Kelley] would yell, 'go off,' then leave."  Report at 9 (docket

6   no. 45 at 12); Compl. at ¶ 4.36.  Beth Thorson, a Special Education Supervisor, told

7   Coverson that she "worried about Kelley's verbal interactions with students" and had

8   been concerned about Kelley's "stress levels" prior to the incident with T.A.  Report at 8

9   (docket no. 45 at 11).  Thorson recalled telling DeWitte about the "ticking time bomb"

10  label, but she was not aware of any allegation of Kelley previously striking a child.  <u>Id.</u>

11       The Complaint indicates that, during the course of the 2015–2016 school year,

12  T.A. reported to his mother that Kelley "would pinch him sometimes at school" and that

13  he had received various scratches or rugburns when Kelley restrained him at school by

14  holding his face to the carpet.  Compl. at ¶¶ 4.6–4.9.  T.S. allegedly raised concerns about

15  this mistreatment with the District, but was informed that "this practice was necessary to

16  restrain children and control behavior."  <u>Id.</u> at ¶ 4.10.

17       In moving for summary judgment, the District relies on the declaration of a

18  paralegal in the District's General Counsel's office, who reviewed the District's

19  personnel file regarding Kelley.  Rusimovic Decl. at ¶¶ 2 & 5 (docket no. 24).  The

20  _____

21  no. 24-2 at 3).  Whether and to what extent Kelley's fragile emotional state rendered her
    subsequent behavior reasonably foreseeable by the school principal or other supervisory
22  personnel is a question for the trier of fact.

23

1  paralegal saw "no disciplinary issues documented" in the file, and she summarized

2  Kelley's annual job performance evaluations as reflecting a satisfactory or better rating.

3  *Id.* at ¶ 5.  According to Coverson's Report, however, during Guerro's tenure as Kelley's

4  supervisor, other staff expressed concerns about the way Kelley spoke to students and

5  about her grabbing them, but all feedback was given to Kelley verbally and was "not

6  documented in writing."  Report at 9 (docket no. 45 at 12).  A reasonable inference to be

7  drawn from the information in the Report is that, prior to January 20, 2016, the District's

8  supervisory personnel were, at least, concerned about Kelley's temperament, and they

9  might have been aware of Kelley's alleged violations of the District's written policies

10  concerning corporal punishment and the use of physical force.

11        Given the current record, the Court cannot conclude that the District is entitled to

12  judgment as a matter of law on the claims of negligent retention and/or pre-incident

13  supervision.  On the other hand, the assertions of negligent hiring, training, and/or post-

14  incident supervision are conclusory and inconsistent with the factual allegations of the

15  Complaint, which do not question Kelley's qualifications for her position as a special

16  education teacher and reflect that Kelley was reprimanded for her January 2016 behavior

17  and reminded about the District's policies.  Thus, with regard to Claims G and H, the

18  District's motion for summary judgment is DENIED in part as to the claims of negligent

19  retention and/or pre-incident supervision, and otherwise GRANTED.

20              c.    **Negligent Infliction of Emotional Distress**

21        To support a separate claim for negligent infliction of emotional distress, as

22  opposed to non-economic damages in connection with a tort claim, a plaintiff's emotional

23

ORDER - 13

distress "must be susceptible to medical diagnosis and proved through medical evidence." _See Hegel v. McMahon_, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). The plaintiff must present "objective evidence" regarding the "severity of the distress" and the "causal link" between the defendant's conduct and "the subsequent emotional reaction," which must be "reasonable under the circumstances." _Id._ at 132 & 135. Washington courts recognize that "nightmares, sleep disorders, intrusive memories, fear, and anger" might satisfy the "objective symptomology" standard, but only if they "constitute a diagnosable emotional disorder." _Id._ at 135. The District moves for summary judgment because no expert has been disclosed and no medical records have been provided to support the emotional-distress claim. _See_ Def.'s Mot. at 21 (docket no. 23); Freimund Decl. at ¶¶ 2–3 (docket no. 29). Given the status of discovery in this matter, which is undisputed, the District's motion for summary judgment with respect to Claim L is GRANTED, and the claim for negligent infliction of emotional distress is DISMISSED with prejudice.

**5.      Washington Law Against Discrimination**

The WLAD authorizes a civil action by "[a]ny person deeming himself or herself injured by an act in violation" of RCW Chapter 49.60. RCW 49.60.030(2). The WLAD lists certain activities (for example, obtaining and holding employment, and engaging in commerce or certain types of transactions) as to which individuals have a right to be free from discrimination. RCW 49.60.030(1). This case involves "the right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public . . . accommodation." _See_ RCW 49.60.030(1)(b); _see also_ Compl. at

1  ¶ 5.57 (indicating that the District "operates a place of public accommodation," citing

2  RCW 49.60.040).[6]

3         To survive a summary judgment motion challenging a claim brought under

4  RCW 49.60.030(1)(b), a plaintiff suing for racial or disability-based discrimination must

5  establish the following elements of a prima facie case:  (i) the plaintiff's race or status as

6  disabled; (ii) the defendant's status as a place of public accommodation; (iii) the

7  defendant's failure to provide the plaintiff with the same "accommodations, advantages,

8  facilities, or privileges" or "level of designated services" as others of a different race or

9  without a disability were given; and (iv) the plaintiff's race or disability constituted a

10 "substantial factor" in the defendant's dissimilar treatment of the plaintiff.  _See_ _Hartleben_

11 _v. Univ. of Wash._, 194 Wn. App. 877, 883–84, 378 P.3d 263 (2016); _see also_ _Marquis v._

12 _City of Spokane_, 130 Wn.2d 97, 113–14, 922 P.2d 43 (1996) (applying to a gender-based

13 discrimination claim, brought by an independent contractor pursuant to RCW 49.60.030,

14

15 _____

16 [6] The District refers to RCW 49.60.215, but the Complaint does not cite this statute.  According
   to the District, this WLAD provision does not apply because no allegation has been made that

17 T.A. was denied admission to South Shore K-8 or any other Seattle public school.  _See_ Def.'s
   Mot. at 13 (docket no. 23) (citing _Evergreen Sch. Dist. No. 114 v. Wash. State Hum. Rights_

18 _Comm'n_, 39 Wn. App. 763, 777, 695 P.2d 999 (1985) (RCW 49.60.215's "primary thrust is to
   the refusing or withholding of admission to places of public accommodation")).  Washington

19 courts do not, however, construe RCW 49.60.215 so narrowly.  _See_ _W.H. v. Olympia Sch. Dist._,
   195 Wn.2d 779, 788, 465 P.3d 322 (2020) (summarizing RCW 49.60.215 as declaring that

20 "[i]t shall be an unfair practice for any person or the person's agent or employee to commit an
   act which directly or indirectly results in any . . . discrimination . . . in any place of public . . .

21 accommodation").  In _W.H._, the Washington Supreme Court held that, with respect to claims
   brought pursuant to RCW 49.60.215, "school districts are strictly liable for the actions of their

22 employees."  _Id._ at 789.  The Washington Supreme Court would presumably reach the same
   conclusion with regard to claims under RCW 49.60.030(1)(b).

23

the three-part "burden allocation scheme" first articulated in _McDonnell Douglas Corp. v._
_Green_, 411 U.S. 792 (1973)).

In moving for summary judgment, the District does not dispute that T.A. is African American and has a disability, as defined in RCW 49.60.040(7), or that the District operates a place of public accommodation, as defined in RCW 49.60.040(2). The District contends, however, that the record does not establish T.A. was treated in a disparate manner or as a result of discriminatory animus.  Although the Complaint alleges Kelley "believed" that, with respect to discipline, "African American students needed to be treated differently than white students," _see_ Compl. at ¶ 4.37, it does not plead facts to support a conclusion that Kelley acted on any such belief or that T.A. was subjected to discrimination on the basis of race or disability.  The operative pleading recounts no instance in which a similarly-situated student who was not African American and/or not disabled (_i.e._, a comparator) received more favorable treatment than T.A.  In contrast, the portion of the investigative report submitted by the District indicates that Kelley's explanation for restraining T.A. in the restroom on January 20, 2016, while he cried for three hours, was to prevent him from leaving the classroom and running into the street, which he had done the previous week.  Report, Ex. 2 to Rusimovic Decl. (docket no. 24-2 at 2).  This undisputed evidence negates the last two elements of a prima facie case by offering a nondiscriminatory reason for Kelley's conduct.  The record contains no evidence to support a finding that Kelley's justifications for her actions were merely pretextual, _see_ _McDonnell Douglas_, 411 U.S. at 804–07, and thus, the District's motion

for summary judgment as to the WLAD claim is GRANTED.  Claim F is DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    The District's motion for summary judgment, docket no. 23, is GRANTED in part and DENIED in part, as follows:

(i)    T.S.'s claim for loss of consortium (Claim M) is DISMISSED with prejudice as time barred;

(ii)    The § 1983 (equal protection), Title VI, ADA, and Rehabilitation Act claims (Claims A, B, C, and D, respectively) are DISMISSED pursuant to 20 U.S.C. § 1415(*l*) for failure to exhaust;

(iii)    The § 1983 (unlawful seizure) claim (Claim E), WLAD claim (Claim F), intentional tort claims of false imprisonment, assault and battery, and outrage (Claims I, J, and K, respectively), and claim for negligent infliction of emotional distress (Claim L) are DISMISSED with prejudice;

(iv)    The negligence claim (Claim G) is DISMISSED in part with prejudice as to any claim of vicarious liability and Claims G and H are DISMISSED in part with prejudice as to negligent hiring, training, and post-incident supervision; and

(v)    As to the portions of Claims G and H alleging negligent retention and/or pre-incident supervision, the District's motion for summary judgment is DENIED, and those claims remain for trial.

1        (2)     Within twenty-one (21) days of the date of this Order, counsel shall meet

2  and confer and file a Joint Status Report indicating when the parties can be prepared for

3  trial on the negligent retention and pre-incident supervision claims.  In such Joint Status

4  Report, the parties shall address plaintiff's counsel's status and whether she should be

5  required to associate with another attorney or arrange for a different lawyer to substitute

6  for her in this matter.

7        (3)     The Clerk is directed to send a copy of this Order to all counsel of record.

8        IT IS SO ORDERED.

9        Dated this 24th day of March, 2023.

Thomas S. Zilly
United States District Judge